IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | CHAPTER 7 |
| THOMAS J. PRIM | BANKRUPTCY NO. 23-10256(AMC) |
| Debtor | |

**OBJECTION OF ROBERT W. SEITZER,
CHAPTER 7 TRUSTEE, TO THE DEBTOR'S CLAIM OF EXEMPTION**

Robert W. Seitzer, Chapter 7 Trustee (the "Trustee") for the estate of Thomas J. Prim (the "Debtor"), by and through his proposed counsel, Karalis PC, hereby objects (the "Objection") to a certain exemption claimed by the Debtor in Schedule "C" of the Debtor's Bankruptcy Schedules, and in support thereof, respectfully avers as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue of the Debtor's Chapter 7 case and this Objection is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are 11 U.S.C. § 522(l) and Rule 4003(b) of the Federal Rules of Bankruptcy Procedure.

**BACKGROUND**

A. **Procedural Background.**

4. On January 27, 2023 (the "Petition Date"), the Debtor filed for protection under Chapter 7 of the Bankruptcy Code.

5. On January 31, 2023, the Trustee was appointed which appointment remains in effect.

B. **The Personal Injury Litigation and the Settlement.**

6. On or about March 31, 2017, the Debtor was involved in a personal injury incident and thereafter commenced litigation styled *Thomas John Prim, et al. v. Matthew J. Hearn, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, October Term, 2017, No. 825 (the "Litigation").

7. In 2018, Thomas J. Prim, Joseph Prim and Jeanne Prim entered into a Release and Settlement Agreement with Matthew J. Hearn and State Farm Fire & Casualty Company (the "Agreement") to resolve the Litigation. The Agreement is attached hereto as Exhibit "1" and made a part hereof.

8. As set forth in the Agreement, the settlement amount was a present cash value of $400,000.00. *See*, Exhibit "1".

9. Addendum "A" to the Agreement details that State Farm Fire & Casualty Company would pay a combination of up-front cash and future periodic payments with a present cash value of $400,000.00 as follows:

   (a) Up-front cash in the amount of $200,000.00 to Schwartz & Schwartz, P.C. on account of attorneys' fees, liens and expenses and

   (b) Future periodic payments to the Debtor.

10. The future periodic payments are specified as follows (collectively, the "Periodic Payments"):

   (a) Guaranteed lump sum payment of $50,000.00 payable on July 19, 2024;

   (b) Guaranteed lump sum payment of $100,000.00 payable on July 19, 2029 and

   (c) Guaranteed lump sum payment of $228,041.75 payable on July 19, 2044.

2

*See*, Exhibit "1".

11. Addendum "A" to the Agreement also describes the following in connection to the Periodic Payments:

### 3.0 RIGHT TO PAYMENTS

Said payments cannot be accelerated, deferred, increased or decreased by the Releasors/Plaintiffs or any Payee; nor shall the Releasors/Plaintiffs or any Payee have the power to sell or mortgage or encumber same, or any part thereof, nor anticipate the same, or any part thereof, by assignment or otherwise unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance has been approved in advance in a "Qualified Order" as defined in §5891(b)(2) of the Internal Revenue Code and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute. Any attempt by Releasors/Plaintiffs or any Payee to so assign, anticipate, pledge or encumber any annuity payments without complying with the requirements of Internal Revenue Code of §5891(b)(2) and any applicable state law shall be null and void and shall not affect the Releasors/Plaintiffs or any Payee's rights to receive annuity payments. Transfer of the periodic payments is thus prohibited by the terms of this structured settlement and may otherwise be prohibited or restricted under applicable law.

*See, Id.*

12. In addition, Addendum "A" to the Agreement details that State Farm Fire & Casualty Company would pay the sum of $200,000.00 to Prudential Assigned Settlement Services Corporation to fund an annuity to pay the Periodic Payments through the Prudential Insurance Company of America. *See, Id.* The Qualified Assignment and Release Agreement with Pledge Supplement (the "Assignment") is attached hereto as Exhibit "2" and made a part hereof.

13. As set forth in the Assignment, State Farm Fire & Casualty assigned to Prudential Assigned Settlement Services Corporation its liability to make the Periodic Payments to the Debtor. *See*, Exhibit "2".

14. The Assignment also provides the following in connection to the transfer of the Periodic Payments:

3

7.    **Acceleration, Transfer of Payment Rights.** None of the Periodic Payments and no rights to or interest in any of the Periodic Payments of the foregoing being hereinafter collectively referred to as "Payment Rights") can be:

    i.    Accelerated, deferred, increased or decreased by any recipient of any of the Periodic Payments; or

    ii.    Sold, assigned, pledged, hypothecated, or otherwise transferred or encumbered, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance (any such transaction being hereinafter referred to as a "Transfer") has been approved in advance in a "Qualified Order" as defined in Section 5891(b)(2) of the Code (a "Qualified Order") and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.

No Claimant or Successor Payee shall have the power to effect any Transfer of Payment Rights except as provided in sub-paragraph (ii) above, and any other purported Transfer of Payment Rights shall be wholly void. If Payment Rights under this Agreement become the subject of a Transfer approved in accordance with sub-paragraph (ii) above, then the rights of any direct or indirect transferee of such Transfer shall be subject to the terms of this Agreement and any defense or claim in recoupment arising hereunder.

*See, Id.*

C.    **The Exemption Claimed by the Debtor in the Periodic Payments.**

    15.    On April 8, 2023, the Debtor filed his Amended Schedule "A/B": Property [D.I. 10]. Amended Schedule "A/B" is attached hereto as Exhibit "3" and made a part hereof.

    16.    In Amended Schedule "A/B", the Debtor discloses the Periodic Payments as follows:

Question 30. Other amounts someone owes you.

Prudential Qualified Assignment and Release Agreement - $378,041.75

*See*, Exhibit "3".

    17.    On April 8, 2023, the Debtor filed his Amended Schedule "C": The Property You

4

Claim as Exempt [D.I. 11]. Amended Schedule "C" is attached hereto as Exhibit "4" and made a part hereof.

18.  In the Amended Schedule "C", the Debtor has claimed the following exemption in the Periodic Payments:

| BRIEF DESCRIPTION OF THE PROPERTY AND LINE ON SCHEDULE A/B THAT LISTS THIS PROPERTY | CURRENT VALUE OF THE PORTION YOU OWN | AMOUNT OF THE EXEMPTION YOU CLAIM | SPECIFIC LAWS THAT ALLOW EXEMPTION |
|---|---|---|---|
| Prudential Qualified Assignment and Release Agreement | $378,041.75 | $378,041.75 | 42 Pa. C.S. § 8124(c)(4), 40 Pa. C.S. § 514 |

*See*, Exhibit "4".

## RELIEF REQUESTED

19.  The exemption claimed by the Debtor in the Periodic Payments must be denied.

20.  The instant Objection is timely as the 11 U.S.C. § 341(a) Meeting of Creditors has not been concluded as of the date of this Objection.

## ARGUMENT

I.  **Structured Settlements in General.**

21.  The Agreement and the Assignment represent a structured settlement.

22.  As set forth by the Third Circuit Court of Appeals:

Structured settlements are a type of settlement designed to provide certain tax advantages. In a typical personal injury settlement, a plaintiff who receives a lump-sum payment may exclude this payment from taxable income under I.R.C. Sec. 104(a)(2) (providing that the amount of any damages received on account of personal injuries or sickness are excludable from income). However, any return from the plaintiff's investment of the lump-sum payment is taxable investment income. In contrast, in a structured settlement the claimant receives periodic payments rather than a lump sum, and all of these payments are considered damages received on account of personal injuries or sickness and are thus excludable from

income. Accordingly, a structured settlement effectively shelters from taxation the returns from the investment of the lump-sum payment. See Rev.Rul. 79-220, 1979-2 C.B. 74. See also Sen.Rep. No. 97-646, 97th Cong., 2d Sess. reprinted in 1982 U.S.C.C.A.N. 4580, 4583 (explaining that Pub.L. No. 97-473, 96 Stat. 2605, codified Rev.Rul. 79-220 at 26 U.S.C. Sec. 104(a)(2)).

A key characteristic of a structured settlement is that the beneficiary of the settlement must not have actual or constructive receipt of the economic benefit of the payments. Rev.Rul. 79-220. In a structured settlement, the settling defendant's "purchase of a[n] ... annuity contract from the other insurance company [is] merely an investment by [the settling defendant] to provide a source of funds for [him] to satisfy [his] obligation to [the plaintiff]." Id. The arrangement is "merely a matter of convenience to the [defendant] and d[oes] not give the recipient any right in the annuity itself." Id. (emphasis added). Because the recipient never had actual or constructive receipt of the lump-sum amount, the recipient need not include the investment yield on that amount as taxable income. Id. Thus, the exclusion applies to the full amount of the annuity payments because the full amount is received as damages on account of personal injuries. Id.

See, *Western United Life Assur. Co. v. Hayden,* 64 F.3d 833, 839-840 (3d. Cir. 1995).

II. **Payments made under a Structured Settlement Agreement are Property of the Bankruptcy Estate.**

23. The Bankruptcy Code provides that the commencement of a bankruptcy case creates an estate comprised of "all legal or equitable interests of the debtor in property[.]" *See,* 11 U.S.C. §541(a)(1). "[M]ost assets become property of the estate upon commencement of a bankruptcy case, see 11 U.S.C. § 541, and exemptions represent the debtor's attempt to reclaim those assets or, more often, certain interests in those assets, to the creditors' detriment." *See, Schwab v. Reilly,* 560 U.S. 770, 785 (2010).

24. Section 541(c)(1)(A) provides that any interest of a debtor in property becomes property of the estate notwithstanding any provision in an agreement, transfer instrument or applicable nonbankruptcy law that restricts or conditions transfer of such as interest. *See,* 11 U.S.C. § 541(c)(1)(A).

6

25. Under these provisions of Section 541, all of Debtor's rights under the Agreement and the Assignment, including its payment stream, are property of the bankruptcy estate and subject to Trustee's administration (including a sale of the future payments). *See*, *In re Greenly*, 481 B.R. 299, 310-11 (Bankr. E.D. Penn. 2012) (debtor's vested interest in payments from structured settlement annuity is included in "property of the estate" notwithstanding an anti-assignment clause); *In re Jackus*, 442 B.R. 365, 369 (Bankr. D. N.J. 2011) (beneficial interest that debtor possessed in annuity payments at time of her chapter 7 filing became "property of the estate" despite any contractual provision prohibiting debtor from assigning her interest in such payments); *In re Jacob*, 418 B.R. 37, 39 (N.D.N.Y. 2009) ("It is undisputed that Jacob does not own the annuity at issue. However, he does have a right to collect the payments that is a legal or equitable interest in the property. Thus, the right to collect the payments is an asset of the bankruptcy estate."); *In re Kent*, 396 B.R. 46, 54 (Bankr. D. Ariz. 2008) (debtor's entitlement to payments from structured settlement annuity became property of the estate, notwithstanding any contractual anti-assignment language to the contrary); *In re Hughes*, 318 B.R. 704 (Bankr. W.D. Mo. 2004) (debtor's right to receive payments under annuity was included in property of the estate); *In re Myers*, 200 B.R. 155, 159 (Bankr. N.D. Ohio 1996) (under § 541(a), all payments to be received under the terms of a structured settlement were property of the estate); *In re Dees*, 155 B.R. 238, 240 (Bankr. S.D. Ala. 1992) (structured annuity benefits from a wrongful death settlement accruing before and after the filing of the bankruptcy petition are estate property).

III. **The Merits of the Exemption Claimed by the Debtor in the Periodic Payments.**

26. As set forth herein, the Debtor claimed the Periodic Payments as exempt in accordance with 42 Pa. C.S. § 8124(c)(4) and 40 Pa. C.S. § 514. *See*, Exhibit "4".

7

27. 42 Pa. C.S. § 8124(c)(4) states as follows:

(c) Insurance proceeds.--The following property or other rights of the judgment debtor shall be exempt from attachment or execution on a judgment:

(4) Any amount of proceeds retained by the insurer at maturity or otherwise under the terms of an annuity or policy of life insurance if the policy or a supplemental agreement provides that such proceeds and the income therefrom shall not be assignable.

*See*, 42 Pa. C.S. § 8124(c)(4).

28. 40 Pa. C.S. § 514 states as follows:

Whenever under the terms of any annuity or policy of life insurance, or under any written agreement supplemental thereto, issued by any insurance company, domestic or foreign, lawfully doing business in this State, the proceeds are retained by such company at maturity or otherwise, no person entitled to any part of such proceeds, or any instalment of interest due or to become due thereon, shall be permitted to commute, anticipate, encumber, alienate or assign the same, or any part thereof, if such permission is expressly withheld by the terms of such policy or supplemental agreement; and, further, that such company shall not be required to segregate such funds, but may hold them as a part of its general corporate funds.

*See*, 40 Pa. C.S. § 514.

29. That being said, the Agreement and the Assignment contain no anti-assignment provisions. Even if the Agreement and the Assignment did contain anti-assignment provisions, such provisions are not enforceable. *See, e.g.*, 11 U.S.C. § 541(c)(1)(A); *In re Jackus,* 442 B.R. at 372; *In re Sparks*, 2005 WL 1669609 (Bankr. W.D. Tenn. 2005) (holding that a debtor's right to receive payments is property of the bankruptcy estate); *In re Kent,* 396 B.R. 46 (Bankr. D. Ariz. 2008) (finding that the debtor's annuities became property of the estate by virtue of 11 U.S.C. § 541(c)(1)(A), notwithstanding any contractual anti-assignment language to the contrary).

30. In fact, the Agreement and the Assignment specifically allow for the assignment and transfer of the Periodic Payments as long as certain conditions are satisfied.

8

31. As set forth herein, the Agreement provides as follows in connection to the assignment or transfer of the Periodic Payments:

> Said payments cannot be accelerated, deferred, increased or decreased by the Releasors/Plaintiffs or any Payee; nor shall the Releasors/Plaintiffs or any Payee have the power to sell or mortgage or encumber same, or any part thereof, nor anticipate the same, or any part thereof, by assignment or otherwise *unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance has been approved in advance in a "Qualified Order" as defined in §5891(b)(2) of the Internal Revenue Code and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.* Any attempt by Releasors/Plaintiffs or any Payee to so assign, anticipate, pledge or encumber any annuity payments without complying with the requirements of Internal Revenue Code of §5891(b)(2) and any applicable state law shall be null and void and shall not affect the Releasors/Plaintiffs or any Payee's rights to receive annuity payments. Transfer of the periodic payments is thus prohibited by the terms of this structured settlement and may otherwise be prohibited or restricted under applicable law. *(emphasis added)*

*See*, Exhibit "1".

32. In addition, the Assignment provides as follows in connection to the assignment or transfer of the Periodic Payments:

> **Acceleration, Transfer of Payment Rights.** None of the Periodic Payments and no rights to or interest in any of the Periodic Payments of the foregoing being hereinafter collectively referred to as "Payment Rights") can be:
>
> i. Accelerated, deferred, increased or decreased by any recipient of any of the Periodic Payments; or
>
> ii. Sold, assigned, pledged, hypothecated, or otherwise transferred or encumbered, either directly or indirectly, *unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance (any such transaction being hereinafter referred to as a "Transfer") has been approved in advance in a "Qualified Order" as defined in Section 5891(b)(2) of the Code (a "Qualified Order") and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.*

9

No Claimant or Successor Payee shall have the power to effect any Transfer of Payment Rights except as provided in sub-paragraph (ii) above, and any other purported Transfer of Payment Rights shall be wholly void. If Payment Rights under this Agreement become the subject of a Transfer approved in accordance with sub-paragraph (ii) above, then the rights of any direct or indirect transferee of such Transfer shall be subject to the terms of this Agreement and any defense or claim in recoupment arising hereunder. *(emphasis added)*

See, Exhibit "2".

### IV. A "Qualified Order" and the State Structured Settlement Protection Statutes.

33. The Agreement and the Assignment both allow for the sale and transfer of the Periodic Payments if the sale has been approved in advance in a "Qualified Order" as defined in Section 5891(b)(2) of the Internal Revenue Code and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute. See, Exhibits "1" and "2".

### (a) A "Qualified Order".

34. Section 5891 of the Internal Revenue Code provides as follows:

(a) Imposition of tax

There is hereby imposed on any person who acquires directly or indirectly structured settlement payment rights in a structured settlement factoring transaction a tax equal to 40 percent of the factoring discount as determined under subsection (c)(4) with respect to such factoring transaction.

(b) Exception for certain approved transactions

(1) In general

The tax under subsection (a) shall not apply in the case of a structured settlement factoring transaction in which the transfer of structured settlement payment rights is approved in advance in a qualified order.

10

(2) Qualified Order

For purposes of this section, the term "qualified order" means a final order, judgment, or decree which—

(A) finds that the transfer described in paragraph (1)—

(i) does not contravene any Federal or State statute or the order of any court or responsible administrative authority, and

(ii) is in the best interest of the payee, taking into account the welfare and support of the payee's dependents, and

(B) is issued—

(i) under the authority of an applicable State statute by an applicable State court, or

(ii) by the responsible administrative authority (if any) which has exclusive jurisdiction over the underlying action or proceeding which was resolved by means of the structured settlement.

(3) Applicable State statute

For purposes of this section, the term "applicable State statute" means a statute providing for the entry of an order, judgment, or decree described in paragraph (2)(A) which is enacted by—

(A) the State in which the payee of the structured settlement is domiciled, or

(B) if there is no statute described in subparagraph (A), the State in which either the party to the structured settlement (including an assignee under a qualified assignment under section 130) or the person issuing the funding asset for the structured settlement is domiciled or has its principal place of business.

(4) Applicable State court

For purposes of this section—

11

    (A)    In general

        The term "applicable State court" means, with respect to any applicable State statute, a court of the State which enacted such statute.

    (B)    Special rule

        In the case of an applicable State statute described in paragraph (3)(B), such term also includes a court of the State in which the payee of the structured settlement is domiciled.

  (5)    Qualified order dispositive

    A qualified order shall be treated as dispositive for purposes of the exception under this subsection.

*See*, 26 U.S. Code § 5891.

35. As such, the Trustee can clearly liquidate the Periodic Payments as long as the sale is approved in advance in a Qualified Order under the authority of the applicable state statute.

36. The Agreement is governed by the law of the Commonwealth of Pennsylvania, the Assignment is governed by the law of the State of New Jersey and the Debtor is domiciled in the Commonwealth of Pennsylvania. *See*, Exhibits "1" and "2".

37. The Trustee can obtain a Qualified Order under the law of the Commonwealth of Pennsylvania and the State of New Jersey.

38. In addition, this Court has jurisdiction to enter a Qualified Order. *See, e.g., In re Jackus,* 442 B.R. at 370.

  **(b)**    **The Pennsylvania Structured Settlement Protection Act.**

39. Pennsylvania has adopted the Pennsylvania Structured Settlement Protection Act (the "PA SSPA"). *See*, 40 P.S. §§ 4001-4009. *See also, Barber v. Stanko,* 257 A.3d 156, 159 (Pa.

12

Super. Ct. 2021).

40. The PA SSPA provides, among other things, that, "[n]o transfer of structured settlement payment rights shall be effective ... unless the payee has filed a petition requesting such transfer and the petition has been granted by final order or decree of a court of competent jurisdiction based on such court's express written findings that .... [t]he payee has established that the transfer is in the best interests of the payee or his dependents." *See*, 40 P.S. § 4003(a)(3). *See also, Barber v. Stanko*, 257 A.3d at 159.

41. In addition, Section 4004 of the PA SSPA, 40 P.S. § 4004, provides that the petition to transfer structured settlement payments shall be filed where the payee is domiciled. *See*, 40 P.S. § 4004. *See also, Barber v. Stanko*, 257 A.3d at 160.

42. The Trustee can clearly comply with the PA SSPA to sell the Periodic Payments.

43. It is important to note that in a bankruptcy context, this Court only has to find that the proposed sale is in the best interest of the bankruptcy estate and its creditors, not in the best interest of the Debtor. *See, e.g., In re Jackus,* 442 B.R. at 370.

**(c)  The New Jersey Structured Settlement Protection Act.**

44. New Jersey has adopted the New Jersey Structured Settlement Protection Act (the "NJ SSPA"). *See*, N.J.S.A. 2A:16-63, *et seq. See also, In re Jackus,* 442 B.R. at 365.

45. The NJ SSPA provides that:

No direct or indirect transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee of structured settlement payment rights unless the transfer has been approved in advance in a final court order or order of a responsible administrative authority based on express findings by the court or reasonable administrative authority that: a. The transfer is in the best interest of the payee, taking into account the welfare and support of the payee's dependants; b. The payee has been advised in writing by the transferee to seek

13

independent professional advice regarding the transfer and has either received the advice or knowingly waived the right to seek that advice in writing; and c. The transfer does not contravene any applicable statute or the order of any court or other government authority.

See, N.J.S.A. 2A:16-66. See also, In re Jackus, 442 B.R. at 371.

46.    The Trustee can clearly comply with the NJ SSPA to sell the Periodic Payments.

47.    As set forth herein, in a bankruptcy context this Court only has to find that the proposed sale is in the best interest of the bankruptcy estate and its creditors, not in the best interest of the Debtor. See, Id.

## CONCLUSION

48.    For all of the reasons set forth herein, the Objection must be sustained. The exemption claimed by the Debtor in the Periodic Payments is not valid or proper. Quite simply, the Trustee has the right and the obligation to sell the Periodic Payments for the benefit of the Debtor's bankruptcy estate. While the Trustee has yet to "shop" the Periodic Payments, he has already received an offer from J.G. Wentworth in the amount of $120,000.00. As such, it is clearly in the best interests of the Debtor's bankruptcy estate for the Trustee to sell the Periodic Payments.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**WHEREFORE**, the Trustee respectfully requests that this Honorable Court (i) sustain the Objection and (ii) for such other relief as this Court deems just and proper.

        **Respectfully submitted,**

        **KARALIS PC**

By: /s/ Robert W. Seitzer
     ROBERT W. SEITZER
     1900 Spruce Street
     Philadelphia, PA 19103
     (215) 546-4500
     rseitzer@karalislaw.com

*Proposed Attorneys for the Trustee*

Dated: April 19, 2023