IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | CHAPTER 7 |
| | : | |
| THOMAS J. PRIM | : | BANKRUPTCY NO. 23-10256(AMC) |
| | : | |
| Debtor | : | |
| | : | |

**OBJECTION OF ROBERT W. SEITZER, CHAPTER 7 TRUSTEE,
TO THE DEBTOR'S CLAIMS OF EXEMPTION FILED ON JUNE 1, 2023 [D.I. 36]**

Robert W. Seitzer, Chapter 7 Trustee (the "Trustee") for the estate of Thomas J. Prim (the "Debtor"), by and through his counsel, Karalis PC, hereby objects (the "Objection") to certain exemptions claimed by the Debtor in his Fourth Amended Schedule "C" of the Debtor's Bankruptcy Schedules filed on June 1, 2023 [D.I. 36], and in support thereof, respectfully avers as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue of the Debtor's Chapter 7 case and this Objection is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are 11 U.S.C. § 522(l) and Rule 4003(b) of the Federal Rules of Bankruptcy Procedure.

**BACKGROUND**

A. **Procedural Background.**

4. On January 27, 2023 (the "Petition Date"), the Debtor filed for protection under Chapter 7 of the Bankruptcy Code.

5. On January 31, 2023, the Trustee was appointed which appointment remains in

effect.

B. **The Personal Injury Incident.**

6. On or about March 31, 2017, the Debtor was involved in a personal injury incident (the "P.I. Incident"). The Trustee conducted an examination of the Debtor pursuant to Fed. R. Bankr. P. 2004 on June 2, 2023 (the "Rule 2004 Examination"). While a transcript of the Rule 2004 Examination has yet to be received, the facts set forth herein are true and accurate to the best of the Trustee's knowledge, information and belief.

7. The Debtor was seventeen (17) years old at the time of the P.I. Incident and a senior in high school.

8. The Debtor was tackled by a classmate while at school and suffered a severe leg injury.

9. The Debtor broke his left femur, was in a coma and in the hospital for approximately two (2) weeks.

10. The Debtor had surgery and a steel/titanium rod was inserted into his femur.

11. It took him a few months to recover.

12. The Debtor was not employed at the time of the P.I. Incident and lost no income as a result of the P.I. Incident.

C. **The Personal Injury Litigation and the Settlement.**

13. As a result of the P.I. Incident, the Debtor commenced litigation styled *Thomas John Prim, et al. v. Matthew J. Hearn, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, October Term, 2017, No. 825 (the "Litigation").

14. In 2018, Thomas J. Prim, Joseph Prim and Jeanne Prim entered into a Release and

Settlement Agreement with Matthew J. Hearn and State Farm Fire & Casualty Company (the "Agreement") to resolve the Litigation. The Agreement is attached hereto as Exhibit "1" and made a part hereof.

15. As set forth in the Agreement, the settlement amount was a present cash value of $400,000.00. *See*, Exhibit "1".

16. Addendum "A" to the Agreement details that State Farm Fire & Casualty Company would pay a combination of up-front cash and future periodic payments with a present cash value of $400,000.00 as follows:

    (a) Up-front cash in the amount of $200,000.00 to Schwartz & Schwartz, P.C. on account of attorneys' fees, liens and expenses and

    (b) Future periodic payments to the Debtor.

17. The future periodic payments are specified as follows (collectively, the "Periodic Payments"):

    (a) Guaranteed lump sum payment of $50,000.00 payable on July 19, 2024;

    (b) Guaranteed lump sum payment of $100,000.00 payable on July 19, 2029 and

    (c) Guaranteed lump sum payment of $228,041.75 payable on July 19, 2044.

*See*, Exhibit "1".

18. The Agreement contains the following release provisions:

NOW THEREFORE, with the foregoing background being incorporated herein by reference, and made part hereof, Plaintiffs, for and in consideration of the total sum and sole consideration of Four Hundred Thousand Dollars ($400,000.00), payable by the Defendants, receipt of which is hereby acknowledged, do hereby remise, release, and forever discharge, and by these presents, do for themselves, their successors, administrators, assigns, lienholders, heirs and executors, remise, release, and forever discharge Defendants, their affiliates and related companies, including predecessors and successors in interest and assigns, and their respective past,

> present, and future officers, directors, stockholders, insurers, attorneys, agents, servants, representatives, employees, and members, and any and all other persons, firms, or corporations with whom any of the former have been, are now, or may hereafter be affiliated, of and from any and all past, present, or future claims, demands, obligations, actions, causes of action, liens, rights, damages, costs, expenses, and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery, and whether for compensatory or punitive damages, which the Plaintiffs now have, or which may hereafter accrue or otherwise be acquired, on account of, or in any way growing out of, or which are the subject of the claim identified above including, without limitation, any and all known or unknown claims for bodily and personal injuries to Plaintiffs, and the consequences thereof, which have resulted or may result from the alleged negligent or intentional acts, breaches and/or omissions of the Defendants. This Release, on the part of the Plaintiffs, shall be a fully binding and complete settlement between the Plaintiffs, the Defendants, and all parties represented by or claiming through the Plaintiffs save only the executory provisions of this Release and Settlement Agreement.
>
> The Plaintiffs hereby acknowledge and agree that the Release set forth hereinabove is a General Release, and they further expressly waive and assume the risk of any and all claims for damages which exist as of this date, but which the Plaintiffs do not know of or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect their decision to enter into this Release and Settlement Agreement. The Plaintiffs further agree that they have accepted payment of the sums specified herein as a full and complete compromise of matters involving disputed issues of law and fact, and they fully assume the risk that the facts or the law may be otherwise than they believe.

*See, Id.*

19. Addendum "A" to the Agreement details that State Farm Fire & Casualty Company would pay the sum of $200,000.00 to Prudential Assigned Settlement Services Corporation to fund an annuity to pay the Periodic Payments through the Prudential Insurance Company of America. *See, Id.* The Qualified Assignment and Release Agreement with Pledge Supplement (the "<u>Assignment</u>") is attached hereto as Exhibit "2" and made a part hereof.

20. As set forth in the Assignment, State Farm Fire & Casualty assigned to Prudential Assigned Settlement Services Corporation its liability to make the Periodic Payments to the Debtor. *See*, Exhibit "2".

4

**D.      The Exemptions Claimed by the Debtor in the Periodic Payments.**

21.     On the Petition Date, the Debtor filed his Schedule "C": The Property You Claim as Exempt ("Schedule C") [D.I. 1].

22.     On April 8, 2023, the Debtor filed his Amended Schedule C [D.I. 11]. In the Debtor's Amended Schedule C, the Debtor attempted to claim all of the Periodic Payments as exempt pursuant to 42 Pa. C.S. § 8124(c)(4) and 40 Pa. C.S. § 514.

23.     On April 19, 2023, the Trustee filed an Objection to the Debtor's Exemptions claimed in the Periodic Payments (the "Initial Exemption Objection") [D.I. 15].

24.     In the Initial Exemption Objection, the Trustee indicated that the exemptions claimed by the Debtor in the Periodic Payments were not valid or proper. The Trustee withdrew the Initial Exemption Objection on May 9, 2023 without prejudice in light of the below-stated additional amendments to Schedule C [D.I. 29].

25.     On May 4, 2023, the Debtor filed his Second Amended Schedule C [D.I. 25].

26.     On May 8, 2023, the Debtor filed his Third Amended Schedule C [D.I. 28].

27.     On June 1, 2023, the Debtor filed his Fourth Amended Schedule C. The Fourth Amended Schedule C is attached hereto as Exhibit "3" and made a part hereof.

28.     In the Fourth Amended Schedule C, the Debtor has claimed the following exemptions in the Periodic Payments:

5

| BRIEF DESCRIPTION OF THE PROPERTY AND LINE ON SCHEDULE A/B THAT LISTS THIS PROPERTY | CURRENT VALUE OF THE PORTION YOU OWN | AMOUNT OF THE EXEMPTION YOU CLAIM | SPECIFIC LAWS THAT ALLOW EXEMPTION |
|---|---|---|---|
| Prudential Qualified Assignment and Release Agreement (Although payments be made [sic] under qualified assignment total $378,042, the liquidation value is estimated to be $120,000.) | $120,000.00 | $27,900.00 | 11 U.S.C. § 522(d)(11)(D) |
| | | $92,100.00 | 11 U.S.C. § 522(d)(10)(E) |
| | | $92,100.00 | 11 U.S.C. § 522(d)(11)(E) |
| | | $92,100.00 | 11 U.S.C. § 522(d)(10)(C) |

*See*, Exhibit "3".

**E.        The Debtor's Motion to Convert to Chapter 13.**

29.    After the initial Exemption Objection was filed, on May 2, 2023, the Debtor filed the Motion to Convert Case from Chapter 7 to Chapter 13 (the "Conversion Motion") [D.I. 21].

30.    On May 2, 2023, the Trustee filed an Objection to the Conversion Motion [D.I. 22].

31.    The hearing on the Conversion Motion is currently scheduled to be held on June 14, 2023.

32.    As a result of the Objection to the Conversion Motion, the Debtor filed the Second Amended Schedule C and the Third Amended Schedule C.

33.    The Debtor filed the Fourth Amended Schedule C to exempt a Vanguard Brokerage Account (the "Brokerage Account"). The Brokerage Account has a fair market value of $38,181.29 and the Debtor has claimed it as exempt in the amount of $15,220.72. *See*, Exhibit

6

"3".

F.   **The Debtor's Unsecured Obligations.**

34.   The Debtor's Bankruptcy Schedules reflect no secured or priority unsecured claims and general unsecured claims in the aggregate amount of $165,086.00.

35.   The Debtor's most significant obligation is the sum of $152,597.00 owed to the Defense Finance and Accounting Service. The Debtor admits that he owes this money. This obligation arose from the Debtor prematurely leaving the Naval Academy (as hereinafter defined).

36.   While the General Bar Date does not pass until July 17, 2023 and the Governmental Bar Date does not pass until July 26, 2023, a priority unsecured claim has been filed in the amount of $1,679.60 and a general unsecured claim has been filed in the amount of $12,287.49.

G.   **The Debtor's Life after the P.I. Incident.**

37.   After the P.I. Incident, the Debtor graduated from high school in 2017.

38.   Thereafter, the Debtor attended a secondary school and graduated in 2018.

39.   In the summer of 2018, the Debtor enrolled at the United States Naval Academy (the "Naval Academy") in Annapolis, Maryland.

40.   Upon information and belief, the Debtor had to pass rigorous physical examinations to attend the Naval Academy.

41.   The Debtor joined the Naval Academy approximately a year and a half after the P.I. Incident.

42.   At the Naval Academy, no restrictions were placed upon the Debtor's physical activities. He was required to perform the same physical drills activities as all other midshipmen.

43.   In addition, the Debtor was on the squash team at the Naval Academy.

7

44. After his junior year at the Naval Academy in 2021, the Debtor dropped out due to, *inter alia*, a change of mind, Covid-19 and his lack of experience with computers.

45. Since departing the Naval Academy, the Debtor has been gainfully employed.

46. He initially worked as a pool operations manager at a facility and currently works as a pool operations manager and a swim instructor at the Swim School of Malvern.

47. He has worked at the Swim School of Malvern for approximately one year and works between thirty-six (36) and forty (40) hours a week.

48. The Debtor is currently twenty-three (23) years old and hopes to go back to college in the next two (2) to three (3) years.

## RELIEF REQUESTED

49. Certain exemptions claimed by the Debtor in the Periodic Payments must be denied.

50. The instant Objection is timely as the 11 U.S.C. § 341(a) Meeting of Creditors was concluded on June 5, 2023 and the Fourth Amended Schedule C was filed on June 1, 2023.

## ARGUMENT

I. **The Exemption Claimed in the Periodic Payments Pursuant to 11 U.S.C. § 522(d)(11)(D).**

51. The Trustee has no objection to the following exemption claimed by the Debtor in the Periodic Payments:

    (a) $27,900.00 pursuant to 11 U.S.C. § 522(d)(11)(D).

II. **The General Legal Standard for Exemptions Claimed Pursuant to 11 U.S.C. § 522(d)(10).**

52. The general purpose of all of the exemptions for all of the exemptions under 11 U.S.C. § 522(d)(10) is to exempt *income* received by a debtor as a substitute for *lost wages*. *See*,

8

*Rousey v. Jacoway,* 544 U.S. 320, 331, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005) (recognizing that the "types of payments that a debtor may exempt under § 522(d)(10) all of which concern income that substitutes for wages."); *In re Daly,* 344 B.R. 304 (Bankr. M.D. Pa. 2005) ("a benefit received in accordance to § 522(d)(10)(C) is viewed as a form of income that substitutes for wages."); *In re Chavis,* 207 B.R. 845, 848 (Bankr. W.D. Pa. 1997) (observing § 522(d)(10) protects "payments on account of lost income due to disability."); *In re Smith,* 179 B.R. 437, 446, n. 4 (Bankr. E.D. Pa.1995); 4–522 Collier on Bankruptcy ¶ 522.09[10].

53. In the context of determining whether payments received pursuant to a structured settlement were received on account of lost income, courts will typically rely on whether the debtor is disabled as a result of the underlying accident. *See, In re Greenly,* 481 B.R. 299, 315 (Bankr. E.D. Pa. 2012). *See also, In re Murphy,* Bky. No. 98–36084, 2000 WL 49297, *2 (Bankr. E.D. Pa. Jan. 19, 2000) (finding that annuity payments received pursuant to structured settlement were exemptible pursuant to § 522(d)(10)(C) because parties agreed that the debtor was disabled as a result of his injuries).

54. The Debtor is not disabled. The Debtor has never received any disability payments. As set forth herein, the Debtor was physically fit to attend the Naval Academy and has been gainfully employed ever since his departure from the Naval Academy.

55. When a debtor is not disabled, an income stream under a structured settlement is not intended to compensate him or her for lost income. *See, In re Greenly,* 481 B.R. at 315.

(a) **The Exemptions Claimed in the Periodic Payments Pursuant to 11 U.S.C. § 522(d)(10)(C).**

56. The Debtor has claimed the Periodic Payments as exempt in the amount of $92,100.00 pursuant to 11 U.S.C. § 522(d)(10)(C).

9

57. This claimed exemption is not valid or proper and must be disallowed in its entirety.

58. Section 522(d)(10)(C) of the Bankruptcy Code provides, in relevant part, as follows:

(d) The following property may be exempted under subsection (b)(1) of this section:. . . .

(10) the debtor's right to receive — ...

(C) a disability, illness or unemployment benefit ...

See, 11 U.S.C. § 522(d)(10)(C).

59. That being said, the Agreement and Assignment at issue is a structured settlement of a personal injury action and the Debtor is not disabled, sick or unemployed as a result of the P.I. Incident.

60. Addendum "A" to the Agreement reflects that the Periodic Payments "... constitute physical injuries, arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended..." See, Exhibit "1". It does not mention lost income.

61. An exemption claimed under 11 U.S.C. § 522(d)(10)(C) requires that the benefit be received as payment in lieu of future earnings of a debtor whose ability to generate future earnings has been reduced or lost because of disability, illness, or unemployment. See, In re Sanchez, 362 B.R. 342, 351 (Bankr. W.D. Mich. 2007); In re Jones, 446 B.R. 466, 471 (Bankr. D. Ka. 2011).

62. Workers' compensation and Social Security disability are the normal payments exempted under this subsection. See, In re Wegrzyn, 291 B.R. 2, 5 (Bankr. D. Mass. 2003).

10

63. According to the legislative history, exemptions claimed under 11 U.S.C. § 522(d)(10)(C) are available to compensate for disability benefits. *See, In re Evans*, 29 B.R. 336, 337 (Bankr. D.N.J. 1983).

64. Section 11 U.S.C. § 522(d)(10)(C) exempts the debtor's "right to receive ... temporary contractual benefits, most of which will arise from the debtor's employment." *See*, 2 William L. Norton Jr., Bankruptcy Law and Practice 2d. § 46:17 at 46-38 (2d ed. 1997).

65. Section 522(d)(10)(C) of the Bankruptcy Code only applies to government benefits and short term employment related disability benefits. *See, In re Wegrzyn*, 291 B.R. at 5.

66. Quite simply, the Periodic Payments are not a benefit for a disability, illness or unemployment.

67. The Agreement reflects that the Periodic Payments will be paid to resolve the Litigation. The Debtor believes that the Periodic Payments were structured in such a fashion as he was financially unsophisticated at the time of the Agreement, not for lost income or lost future earnings.

68. The Debtor is not disabled, ill or unemployed as a result of the P.I. Incident.

69. As the Debtor is not disabled, the Periodic Payments were not intended to compensate him for lost income. *See, In re Greenly*, 481 B.R. at 315.

70. The Debtor attended the Naval Academy and was required to perform the same physical drills activities as everyone else. The Debtor lost no income as a result of the P.I. Incident.

(b) **The Exemptions Claimed in the Periodic Payments Pursuant to 11 U.S.C. § 522(d)(10)(E).**

71. The Debtor has also claimed the Periodic Payments as exempt in the amount of $92,100.00 pursuant to 11 U.S.C. § 522(d)(10)(E).

11

72. This claimed exemption is also not valid or proper and must be disallowed in its entirety.

73. Section 522(d)(10)(E) of the Bankruptcy Code provides, in relevant part, as follows:

> (d) The following property may be exempted under subsection (b)(1) of this section:. . . .
>
> > (10) the debtor's right to receive — . . .
> >
> > > (E) a payment under a stock bonus, pension, profit sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor. . . .

*See*, 11 U.S.C. § 522(d)(10)(E).

74. The Periodic Payments are not on account of illness, disability, death, age, or length of service.

75. Addendum "A" to the Agreement reflects that the Periodic Payments "... constitute physical injuries, arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended..." *See*, Exhibit "1". It does not mention lost income. The Debtor believes that the Periodic Payments were structured in such a fashion as he was financially unsophisticated at the time of the Agreement, not for lost income or lost future earnings.

76. The exemption under 11 U.S.C. § 522(d)(10)(E) protects future steams of income which are intended to replace wages lost upon retirement, disability, or the death of a wage earner upon whom the claimant was dependent. *See*, *In re Stover*, 332 B.R. 400, 403 (Bankr. W.D. Mo. 2005) (*citing In re Vickers*, 954 F.2d 1426, 1429 (8th Cir. 1992). *See also*, H.R. REP. NO. 95-595, at 362 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6318.

12

77. Whether an asset qualifies as a pension, annuity, or other similar plan or contract depends upon whether the contract provides benefits in lieu of earnings after retirement. *See, In re Jones*, 446 B.R. at 472.

78. The typical feature of plans exempt under 11 U.S.C. § 522(d)(10)(E) is to fill or supplement a salary or wage loss. *See, In re Jones*, 446 B.R. at 472.

79. To determine whether a contract provides a substitute for wages, courts examine the facts and circumstances surrounding the contract's creation as well as its contents. *See, In re Cassell*, 443 B.R 200, 2010 Bankr. LEXIS 4568, 2010 WL 5185054 (Bankr. N.D. Ga. 2010).

80. The intent of the drafters of 11 U.S.C. § 522(d)(10)(E) was as follows:

> Paragraph (10) exempts certain benefits that are akin to future earnings of the debtor. These include social security, unemployment compensation, or public assistance benefits, veteran's benefits, disability, illness, or unemployment benefits, alimony, support, or separate maintenance (but only to the extent reasonably necessary for the support of the debtor and any dependents of the debtor), and benefits under a certain stock bonus, pension, profitsharing, annuity, or similar plan based on illness, disability, death, age or length of service.

*See*, H.R. Rep. no. 595, 95th Cong., 1st Sess. 362 (1977), reprinted in 1978 U.S. Code Cong. & Ad. News, 5787, 6318.

81. The word "annuity" in this subsection deals with retirement, unemployment compensation, alimony, disability payments and things of this nature. *See, In re Simon*, 71 B.R. 65, 68 (Bankr. N.D. Ohio 1987).

82. These sources of the exempt payments are essentially an employer, former spouse, or a government entity.

83. As such, an annuity which is merely in settlement of a tort suit was not contemplated by the drafters.

84. The drafters only appeared to be concerned with annuities as used in retirement and disability planning. *See, In re Simon*, 71 B.R. at 68.

85. Quite simply, 11 U.S.C. § 522(d)(11)(E) does not allow for the exemption of an annuity which is used to fund a structured tort settlement. *See, In re Simon*, 71 B.R. at 68.

86. Quite simply, the Periodic Payments are not on account of illness, disability, death, age, or length of service.

87. As set forth herein, the Debtor is not disabled. As such, the Periodic Payments were not intended to compensate him for lost income. *See, In re Greenly*, 481 B.R. at 315.

88. As set forth herein, the Debtor was admitted and enrolled at the Naval Academy approximately one and a half years after the P.I. Incident. After departing the Naval Academy, he has been gainfully employed.

89. The Agreement reflects that the Periodic Payments will be paid to resolve the Litigation.

90. In the alternative, the Periodic Payments are not reasonably necessary for the support of the Debtor or his dependents.

91. In determining whether payments are "reasonably necessary," courts consider a number of factors, including the debtor's age, present employment, future employment prospects and general health. *See, In re Brewer,* 154 B.R. 209, 213 (Bankr. W.D. Pa.1993) (listing factors). *See also, In re Greenly*, 481 B.R. at 316.

92. Courts specifically consider a variety of factors, including: "1) debtor's present and anticipated living expenses; 2) debtor's present and anticipated income from all sources; 3) the age of debtor and his dependents; 4) the health of debtor and his dependents; 5) debtor's ability to earn a living; 6) debtor's job skills, training and education; 7) debtor's other assets, including exempt assets; 8) the liquidity of other assets; 9) debtor's ability to save for retirement; 10) the special needs of debtor and his dependents; and 11) debtor's continuing financial obligations, such as alimony or support payments." *See, In re Arellano,* 524 B.R. 615, 623 (Bankr. M.D. Pa. 2015); *see also, e.g. In re Kennedy*, 552 B.R. 183, 191 (Bankr. E.D. Tenn. 2016) (considering similar factors); *In re Bova*, 205 B.R. 467, 477 (Bankr. E.D. Pa. 1997) (same).

93. Applying these strictures to the case at hand:

(a) The Debtor is currently employed as a pool operations manager and a swim instructor at the Swim School of Malvern. His current monthly income is $2,441.35 and his current monthly expenses are $2,441.35. The Debtor's Schedule I: Your Income and Schedule J: Your Expenses are attached hereto as Exhibits "4" and "5", respectively, and made a part hereof.

(b) The Debtor will receive the sum of $27,900.00 from the sale of the Periodic Payments pursuant to his allowed exemption and has claimed the sum of $15,220.72 as exempt from the Brokerage Account.

(c) The Debtor is only twenty-three (23) years old and has no dependents.

(d) The Debtor is able to run and exercise. In order to participate in all of the drills and the physical activities at the Naval Academy, he must be more physically fit and healthy than the average person. In addition, he would have had to pass a rigorous physical examination to even be admitted to the Naval Academy.

15

  (e)  The Debtor has the ability to earn a living. *See*, Exhibit "4".

  (f)  The Debtor's graduated from high school, a secondary school and attended the prestigious Naval Academy for three (3) full years before voluntary leaving.

  (g)  The Debtor has the ability to save for retirement.

  (h)  The Debtor has no special needs.

  (i)  The Debtor has no alimony or support payments.

94.  In addition, the amount of the amount of the exemption should be limited to account for a debtor's basic needs and not to maintain the debtor's present lifestyle. *See, In re Morehead,* 283 F.3d 199, 207 (4th Cir.2002) ("the fresh start guaranteed by bankruptcy, and supported by the exemption scheme, does not entitle a debtor to maintain the lifestyle to which he was accustomed in better times"); *In re Brewer,* 154 B.R. at 213; *In re Greenly,* 481 B.R. at 316.

95.  As set forth herein, the Debtor has a zero net monthly income. *See*, Exhibits "4" and "5".

96.  That being said, if the Debtor were to remove his entertainment expenses, he would have a positive monthly income. *See, In re Helsel,* 326 B.R. 591, 602 (Bankr. W.D. Pa.2005) (recognizing that debtors were not entitled to exempt annual payments where, even if the annual payments are excluded from the debtors' income, the debtors would have a positive monthly net income); *In re Brewer,* 154 B.R. at 214 (disallowing § 522(d)(10) exemption where debtor would still retain sufficient monies for her support and her dependents' support and would allow for the full repayment of the debtor's unsecured creditors).

97. Lastly, this Court can infer from the sporadic timing of the Periodic Payments that the parties to the Agreement did not intend for the Debtor to rely on the Periodic Payments to fund his basic needs. *See, In re Greenly*, 481 B.R. at 316.

### III. The Exemptions Claimed in the Periodic Payments Pursuant to 11 U.S.C. § 522(d)(11)(E).

98. The Debtor has also claimed the Periodic Payments as exempt in the amount of $92,100.00 pursuant to 11 U.S.C. § 522(d)(11)(E).

99. This claimed exemption is also not valid or proper and must be disallowed in its entirety.

100. Section 522(d)(11)(E) of the Bankruptcy Code provides, in relevant part, as follows:

> (d) The following property may be exempted under subsection (b)(1) of this section:. . . .
>
> (11) the debtor's right to receive, or property that is traceable to — . . .
>
> (E) a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor was or is a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor. . . .

*See*, 11 U.S.C. § 522(d)(11)(E).

101. The Periodic Payments are not on account of loss of future earnings of the Debtor.

102. The Agreement reflects that the Periodic Payments will be paid to resolve the Litigation.

103. Addendum "A" to the Agreement reflects that the Periodic Payments "... constitute physical injuries, arising from an occurrence, within the meaning of Section 104(a)(2) of the

17

Internal Revenue Code of 1986, as amended…" *See*, Exhibit "1". It does not mention the loss of future earnings.

104. In cases where a portion of settlement proceeds were deemed exemptible as "loss of future income" under 11 U.S.C. § 522(d)(11)(E), the debtor was severely disabled and/or unable to return to his or her employment as the result of a personal injury. *See e.g., In re Scotti*, 245 B.R. 17, 22 (Bankr. D. N.J. 2000) (permitting exemption where debtor's "poor physical condition" limited ability to work); *In re Territo*, 36 B.R. 667, 671 (Bankr. E.D. N.Y. 1984) (concluding, in the absence of any evidence to the contrary, that proceeds from a settlement could be reasonably attributed to lost earnings where debtor was unable to return to work following an accident).

105. As such, the focus in the cases dealing with § 522(d)(11)(E) is on the Debtor's earning capacity. Accordingly, relevant case law and commentary to the statute at issue is that loss of future earnings is tied to a debtor's diminished capacity or ability to earn. *See, In re Spak*, Case No. 17-20173(MBK) (Bankr. D. N.J. July 30, 2021).

106. Applying these strictures to the case at hand, the Debtor did not lose the ability or capacity to work such that the Periodic Payments "loss of future earnings" under 11 U.S.C. § 522(d)(11)(E). The Debtor did not lose the capacity or ability to work and earn a living as a result of the P.I. Incident.

107. To the contrary, the Debtor graduated from high school shorty after the P.I. Incident, graduated from a secondary school and then enrolled at the Naval Academy. Since departing the Naval Academy, he has been gainfully employed and currently works at a job that requires physical exertion.

108. In addition, as set forth herein, the Periodic Payments are not reasonably necessary for the support of the Debtor or his dependents.

## **CONCLUSION**

109. As articulated by the Bankruptcy Court for the Western District of Pennsylvania:

> One final point should be noted. It is abundantly clear after scrutinizing debtor's schedules that debtor, by filing for bankruptcy, is attempting to retain *all* of his assets, especially the IRA, while relieving himself of liability for all unsecured debts by means of a general discharge. His general unsecured creditors would receive nothing by way of distribution. Disallowing debtor's exemption in the amount claimed will provide funds with which his unsecured creditors could be paid in full while still leaving approximately $15,000.00 which debtor could use for his and his dependents' future support. This amount, when coupled with what debtor and his spouse can expect to earn through gainful employment, should be more than adequate to provide them with life's basic needs.

*See, In re Brewer*, 154 B.R. at 214.

110. For all of the reasons set forth herein, the Objection must be sustained. As set forth herein, the Trustee has no objection to the Debtor's claimed exemption in the Periodic Payments under 11 U.S.C. § 522(d)(11)(D). That being said, the Debtor's claimed exemptions in the Periodic Payments under 11 U.S.C. § 522(d)(10)(C), 11 U.S.C. § 522(d)(10)(E) and 11 U.S.C. § 522(d)(11)(E) are not valid or proper. In the event that the instant Objection is sustained, the Trustee will be able to make a significant distribution to the Debtor's general unsecured creditors. While the Trustee has yet to "shop" the Periodic Payments, he has already received an offer from J.G. Wentworth in the amount of $120,000.00.

111. As such, it is clearly in the best interests of the Debtor's bankruptcy estate for the Trustee to sell the Periodic Payments.

**WHEREFORE**, the Trustee respectfully requests that this Honorable Court (i) sustain the Objection and (ii) for such other relief as this Court deems just and proper.

        **Respectfully submitted,**

        **KARALIS PC**

        By: /s/ Robert W. Seitzer
        ROBERT W. SEITZER
        1900 Spruce Street
        Philadelphia, PA  19103
        (215) 546-4500
        rseitzer@karalislaw.com

        *Attorneys for the Trustee*

Dated: June 5, 2023